IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERMAINE RITA ZIMMERMANN,                     3:11-CV- 6056 RE

              Plaintiff,                     **OPINION AND ORDER**

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

REDDEN, Judge:

Plaintiff Germaine Zimmermann ("Zimmermann") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this matter is remanded for further proceedings in accordance with this Opinion and Order.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1962, Zimmermann completed a general equivalency degree, and alleges disability since November 2004, due to back and hip pain. Her application was denied initially and upon reconsideration. After an April 2009 hearing, an Administrative Law Judge ("ALJ") found her not disabled. Zimmermann's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Zimmermann had the medically determinable severe impairments of L4-S1 discogenic changes, L5-S1 symptomatic fissure, L5-S1 paracentral disc bulge, left hip nondisplaced lateral labral tear with osteophytes, major depressive disorder, anxiety disorder, personality disorder, and polysubstance abuse disorder. Tr. 51-52.

The ALJ determined that Zimmermann retained the residual functional capacity to perform a limited range of light work. Tr. 54.

The ALJ found that Zimmermann was unable to perform any past relevant work, but retained the ability to perform other work, including small products assembler, agricultural sorter, and seedling sorter. Tr. 59-60.

The medical records accurately set out Zimmermann's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Zimmermann contends that the ALJ erred by: (1) finding her not fully credible; (2)

2 - OPINION AND ORDER

finding her mental impairments not severe at step two; (3) failing to consider whether her impairments met or equaled in severity a Listed impairment; (4) improperly rejecting medical opinions, and (5) improperly rejecting lay witness testimony.

## I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

Under the *Cotton* test, a claimant who alleges disability based on subjective

3 - OPINION AND ORDER

> symptoms "must produce objective medical evidence of an underlying
> impairment which could reasonably be expected to produce the pain or other
> symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423
> (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes
> only two requirements on the claimant: (1) she must produce objective
> medical evidence of an impairment or impairments; and (2) she must
> show that the impairment or combination of impairments *could
> reasonably be expected to* (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.

Zimmermann testified that she worked 60-70 hours a week making jewelry to sell in the Eugene craft market, for cash, from 1986 until December 2004, when a chair broke and she fell onto her left hip. Tr. 22-24. She has pain in her left hip since the fall, which is treated with Fentanyl patches. Zimmermann testified that she injured her back in 1986, resulting in constant low back pain that radiates down her left leg. Tr. 26. After her hip injury she was unable to make jewelry.

Zimmermann lives in a house with a male friend, and she loads the dishwasher and sweeps, but "it takes me five minutes to sit down, ten minutes flat on my back, you know, get up and do a little thing as much as I can." Tr. 27. She drives about once every two weeks, usually to see her counselor. She "just can't stand being around other people." Tr. 28. She cries every day, usually triggered by panic attacks, of which she has about six per day, each one lasting for about one half hour. *Id.* When she has a panic attack she curls up on her bed and cannot do anything. Tr. 28-29. Panic attacks are triggered by smells and music. She tries to watch a little television and reads a little, and the rest of the day is spent loading the dishwasher and sweeping. Tr. 29.

Zimmermann testified that she sleeps 15-45 minutes at a time because of nightmares. She has a prescription for medical marijuana, and she smokes marijuana about seven times a day. Tr. 30.

The ALJ found Zimmermann not fully credible as to the extent of her symptoms and limitations. Tr. 59. The ALJ identified clear and convincing reasons for that conclusion. The Commissioner concedes that three of the reasons identified by the ALJ to find Zimmerman not fully credible were errors. Defendant's Brief at 14. As noted below, the ALJ erred in his assessment of Dr. Allcott's opinion. Also as noted below, the ALJ erred in assessing Zimmermann's mental impairments by asserting that she had had only a single psychological assessment and it was based on the claimant's subjective claims Tr. 58.

However, the ALJ did identify numerous inconsistencies in Zimmermann's reports of prior work, her exaggerated pain responses, and her positive drug screens. Tr. 51-53. The ALJ's determination that Zimmermann is not fully credible is supported by substantial evidence.

## II. Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

5 - OPINION AND ORDER

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

Zimmermann argues that the ALJ erred by finding her mental impairments of panic attacks and Post Traumatic Stress Disorder ("PTSD") not severe. The ALJ properly determined that Zimmermann had severe impairments at step two and continued the analysis. The Commissioner argues that any error in failing to identify other limitations as "severe" at step two is harmless because the ALJ continued the analysis. Zimmermann does not identify which specific functional limitations arising from PTSD or a panic disorder were not included in the ALJ's residual functional capacity analysis. However, as set out below, the ALJ erred in his analysis of the mental health evidence and must reconsider the weight to be given that evidence on remand.

## III. The Listings

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§

404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

Zimmermann contends that the ALJ failed to consider whether her impairments, in combination, equaled in severity a Listed impairment. However, the claimant has the burden of establishing a prima facie case of disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). The claimant must establish that she has an impairment listed in the regulations and that she has met the duration requirement. *Id.* Zimmermann does not identify which Listed impairment she meets or equals. The ALJ is not required to consider whether a claimant's impairments equal a Listed impairment unless the claimant presents evidence to establish equivalence. *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005). Accordingly, the ALJ did not err at step three.

**IV. Physician Opinions**

7 - OPINION AND ORDER

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. John V. Allcott, M.D.

Dr. Allcott was Zimmermann's treating physician from at least September 2007 until December 2008. In May 2008 he wrote that Zimmermann is "disabled and unemployable" due to both medical issues and "several disabling emotionally based problems." Tr. 439. In December 2008 Dr. Allcott stated that she "remains disabled and unemployable," that her condition would continue for at least a year, and "probably will be permanent." Tr. 484.

The ALJ said:

> The undersigned cannot accept Dr Allcott's opinion. Critical here is that the claimant did not start care with Dr. Allcott until after her disability became subject to review. After last seeing Dr. Mentzer in October 2001 [citation omitted], the claimant did not first seek treatment with Dr. Allcott until nearly seven years later in September 2007 [citation omitted], the month after she filed concurrent applications for Social Security benefits. Dr. Allcott's care for the claimant is entirely incompatible with that of someone who has debilitating symptoms and pain, or whose condition has declined to the point that it has become debilitating. Dr. Allcott has documented no significant objective neurologic or

>orthopedic signs. Additionally, Dr. Allcott's opinions are unfounded
>based on all other medical evidence and opinions in the record finding
>the claimant has few valid objective limitations due to any impairment,
>as discussed below. He has ignored his own unremarkable chart notes.
>Dr. Allcott's care of the claimant has been conservative throughout.
>He has prescribed narcotic medications, but little else. He has not seen
>a medical need to refer the claimant to a specialist of any type or send
>her to a pain clinic. In his letters, Dr. Allcott has failed to address or
>discount, the claimant's misrepresenting and exaggerating her pain to
>obtain excessive narcotics....Dr. Allcott evidently relied on the
>claimant's alleged symptoms and pain. Yet, she is not a [sic] credible
>for the reasons explained above and below. In sum, Dr. Allcott's
>residual functional capacity assessment for the claimant cannot be
>accepted as anything more than an advocacy on behalf of the claimant
>and is rejected.

Tr. 55.

The ALJ cannot dismiss Dr. Allcott's opinion based on the fact that the claimant first saw the doctor after filing her application for benefits. The ALJ asserts that Dr. Allcott's care of the claimant is inconsistent with the care of a person with debilitating symptoms and pain, and that he has documented no objective neurologic or orthopedic signs. The Commissioner concedes that the ALJ incorrectly interpreted a September 2007 MRI which revealed discogenic change at 4-5 and 5-1 a "subannular high signal suggesting a painful fissure at 5-1," and a disc bulge paracentral L5-S1. Defendant's Brief at 13; Tr. 370.

The ALJ rejected Dr. Allcott because "he ignored his own unremarkable chart notes." Tr. 55. On September 24, 2007, Dr. Allcott's notes indicate he reviewed a March 2006 MRI, which indicated a right foraminal disc protrusion at L5-S1. Tr. 362. He noted that she was restless, crying, jerking her arms back and forth, and wrote that she presents "a difficult clinical challenge." Tr. 363. Dr. Allcott stated that it was "not clear to me whether there is a significant physical component involved or if this is primarily a psychiatric presentation." *Id.* In November

9 - OPINION AND ORDER

2007 Dr Allcott noted that Zimmermann was "desperate for pain relief and anxiety," she endorsed a list of depression symptoms, that she was "rocking anxious and pressured, seems in pain," and he prescribed Effexor. Tr. 360. In late November 2007 Dr. Allcott noted that her panic attacks were worse on Seroquel, that she felt "like she is under water," her sleep was poor, she was constantly moving, and her mood was labile, moving "from forced high amplitude rocking to calm smile." Tr. 357. Dr. Allcott changed her medication from Effexor to Diazepam. *Id.*

In December 2007 he noted she was rocking, her pain was not controlled but her anxiety was a little better. Tr. 352. Zimmermann endorsed multiple symptoms of depression and insomnia, and admitted buying street drugs for pain. In January 2008 Dr. Allcott noted continued severe pain and anxiety. Zimmermann's goal was to sweep the floor, a room a day. Tr. 349. Her PTSD symptoms were reduced from six flashbacks to three, though the time frame is not identified. Zimmermann endorsed multiple symptoms of depression.

On January 16, 2008, Zimmermann was admitted to the hospital for chronic pain and anxiety and remained there until discharged on February 5, 2008. Dr. Allcott wrote the discharge summary, in which he noted final diagnoses of chronic back pain secondary to degenerative disc disease at L4-5 and L5-S1; fissure in L5-S1 disc, sensory hypoesthesia in the left L5 distribution; chronic left hip pain secondary to lateral labral tear with osteophytes; polydrug dependence including benzodiazepine, opioids, and cocaine; somatoform pain disorder versus malingering; anxiety; depression; and hospital posttraumatic stress disorder.

While she was hospitalized, Dr. Allcott asked Douglas Bovee, M.D., to examine Zimmermann. Tr. 401. Dr. Bovee recommended residential treatment. Dr. Allcott asked

Howard Sampley, M.D., to evaluate Zimmermann's depression and anxiety. Tr. 396-400. Dr. Allcott asked Andrea Halliday, M.D., to evaluate Zimmermann's back and hip pain. Tr. 394-95. Dr. Allcott advised Zimmermann to remain in contact with alcoholics anonymous, to seek long term residential care with Willamette Family Treatment Center, and to continue with Lane County Mental Health. As to the latter, Dr. Allcott urged her "particularly to explore what appeared to be PTSD symptoms with recurrent nightmares, flashbacks, and intrusive thoughts." Tr. 382.

The evidence does not support the ALJ's assertion that Dr. Allcott ignored his own unremarkable chart notes. Nor does the evidence support the ALJ's assertion that Dr. Allcott's treatment of Zimmermann was not consistent with the treatment required by a person with debilitating symptoms. The ALJ failed to identify clear and convincing reasons to reject Dr. Allcott's uncontradicted opinion.

### B. Richard L. Mentzer, M.D.

Dr. Mentzer was Zimmermann's treating physician from January 1990 until June 1994. Tr. 251-275. In August 2007 he wrote that he had last examined her in October 1991, at that at that time, she had chronic low back pain with radicular symptoms, chronic anxiety, and depression. Dr. Mentzer wrote, in response to an inquiry from Oregon Department of Human Services disability office, that Zimmermann had difficulty with bending, lifting, and twisting, and that she had "some difficulty with interpersonal interaction in a workplace situation, as well as concentration, persistence and memory due to the depression. In conclusion, she did have some physical and psycho-emotional disability in regards to gainful employment...when she was my patient." Tr. 251.

11 - OPINION AND ORDER

The ALJ did not accept Dr. Mentzer's opinion. Tr. 54. The ALJ noted that the opinion was based on care that occurred eight years ago and was "too remote and dated." *Id.* The ALJ stated that Dr. Mentzer's opinion was not supported by objective signs.

Zimmermann's amended onset date is November 2004. It was reasonable for the ALJ to reject Dr. Mentzer's opinion as too remote in time.

### C. Alison Prescott, Ph.D.

Dr. Prescott conducted a psychodiagnostic evaluation of Zimmermann in October 2007. Tr. 297-301. She said Zimmermann exhibited pain behavior while walking and rocked back and forth during the interview. Tr. 299. Zimmermann was oriented, her speech was of normal rate and rhythm, but her "response style was chaotic." *Id.* There was no evidence of hallucinations or delusions, but her affect was "very labile." *Id.* She was "very hysterical and upset throughout the interview when asked about her symptoms and stated '[n]obody will do anything.'" *Id.* Dr. Prescott stated that Zimmermann appeared to be at least moderately depressed, and "showed impairment with concentration." Tr. 300. Dr. Prescott noted an unstable affect, impulsiveness, poor emotional regulation, chaotic presentation, and poor coping skills. *Id.* Dr. Prescott stated that Zimmerman's activities of daily living were restricted. Her diagnostic impression was Major Depressive Disorder, recurrent, Panic Disorder, and Personality Disorder NOS with Borderline Features.

The ALJ noted Dr. Prescott's opinion, and, the Commissioner argues, adequately accounted for the identified functional limitations by restricting Zimmermann to understanding and remembering simple instructions but not detailed ones, not working with the general public due to labile affect, and finding her capable of normal, routine co-worker interaction. Tr. 54. The

ALJ relied on the opinion of non-examining psychologist Frank Lahman, Ph.D., who opined that Zimmermann's impairments included a panic disorder. Tr. 329.

However, as set out below, the ALJ failed adequately to consider the objective evidence from the Options counseling services.

### D. Options Counseling Services of Oregon, Inc.

#### 1. Patti Bear, M.A., Q.M.H.P.

Ms. Bear conducted a Psychosocial Comprehensive Mental Health Assessment in February 2008. Tr. 474-78. She recorded symptoms of trauma, re-experiencing, avoidance, and hypervigilance. Zimmermann reported that there were bad things in her past that she did not want to talk about, that she has nightmares and does not want to sleep, that she has flashbacks, does not trust people, and that she has panic attacks whenever she goes out in public during which she has a hard time breathing, she cries, shakes and sweats. Tr. 474. Zimmermann was agitated and anxious and her recent and immediate memory was impaired. Tr. 477. She cried, stuttered and rocked herself throughout the interview. Tr. 478. Ms. Bear diagnosed PTSD and assessed a GAF score of 35. *Id.*

The ALJ did not address this evidence. This was error.

#### 2. Heather DeVore, M.A., Q.M.H.P.

Ms. DeVore counseled Zimmermann from April 4, 2008 through at least June, 2008. Tr. 450-68. She noted multiple instances of Zimmermann crying and shaking.

On May 28, 2008, Ms. DeVore noted that Zimmermann was extremely tearful and frightened. She had distracted herself out of one panic attack in the last week, and reported that they occur daily between five and six p.m. because that was the time "when he would come

13 - OPINION AND ORDER

home." Tr. 457. "Attempted to discuss historical issues related to current symptoms, but this caused a panic attack during the session. Therapist worked with [client] to practice deep breathing and staying present to manage the panic attack." *Id.*

>   On June 23, 2008, Ms. DeVore wrote:

>> Therapist observed this client from the office window in the parking lot seemingly in distress. Therapist went outside to assist client, who was being restrained by her roommate as she was attempting to run away. Her roommate reported that she was trying to run into traffic and that when they were in the car client was trying to jump out of the car while it was moving.

>> Therapist assisted client in calming down through deep breathing and soothing talk. Client eventually sat down on the ground but continued to be extremely reactive to people approaching her. Police arrived and were provided information by client's roommate and PMHNP Heidi Tafjord.

>> Client repeatedly stated that she did not want to go to the hospital and also stated to therapist 'don't let them [police] tie me up.' Thereapist attempted to reassure client and encouraged her to go to the hospital voluntarily.

>> Police advised that at this point client did not have a choice about going to the hospital, and continued to attempt to have client get in the police car voluntarily. She eventually did this with her roommate and was transported to the hospital by police.

Tr. 451.

On June 25, 2008, Ms. DeVore wrote "She also reported that her panic attacks were fairly constant. Therapist observed client repeatedly tighten her face and turn her body in a way that appeared to be pushing something away. Therapist asked client if this gesture was about physical pain or the panic and she stated that it was about the panic." Tr. 450. Ms. DeVore observed a

number of leg and hip cramps, and Zimmermann "repeatedly forgot what she was attempting to say midsentence." *Id.*

The ALJ cited to but did not discuss these reports in rejecting Ms. Brandenburg's opinion as set out below.

### 3. Chelsea Brandenburg, M.Ed.

Ms. Brandenburg conducted a Comprehensive Mental Health Assessment of Zimmermann on February 25, 2009. Tr. 514-16. Zimmermann continued to report intense nightmares and almost daily flashbacks. Zimmermann said she became "stuck" in the flashbacks so that her level of functioning is impaired. Tr. 514. Medication had partially controlled panic attacks and anxiety.

Zimmermann reported sleeping for forty-five minutes at a time, waking with nightmares, and constant fatigue. She reported that she continues to "freeze up," "get nervous," and "start sweating" when around other people. She continued to isolate at home, though she was able to make appointments and follow through when needed. Tr. 515. She complained of problems with her short term memory, and chronic, intense fear and anxiety, especially in social situations, that also interrupt sleep. Zimmermann has a medical marijuana card and smokes marijuana seven times a day.

Ms. Brandenburg noted that Zimmermann's affect was blunted and her mood anxious. She was agitated with tremors or tics, her immediate memory was impaired, and she had mild suicidal ideation. Tr. 516. Ms. Brandenburg diagnosed PTSD, with a GAF of 35, and noted that Zimmermann displayed hypervigilance. *Id.*

The ALJ noted this opinion and stated that "the aspects of the opinion by a treating Options' therapist that the claimant has a post traumatic stress disorder and has a GAF of 35 are rejected." Tr. 52. The ALJ stated "[n]o psychiatric source has found her unable to work. In reality, serious questions are raised regarding the reliability of Options' psychological report considering that they fail to meaningfully address the credibility of the claimant's presentation, specifically the possibility that she might be exaggerating symptoms and events for purposes of secondary gain, in this case for narcotics." *Id.*

The ALJ fails to note that Zimmermann's treating physician also diagnosed PTSD, as did two separate therapists at Options. Tr. 384, 478. Dr. Allcott noted on February 5, 2008, that Zimmermann displayed "a considerable degree of posttraumatic stress disorder symptomatology with nightmares, intrusive thoughts, and anxiety." Tr. 383. Dr. Allcott wrote that Zimmermann reported there had been bad events in her life, but refused to reveal what those were, except "by a slip of her tongue, sexual assault against her." *Id.*

The ALJ's rejection of these mental health assessments is not supported by substantial evidence, particularly when these assessments are supported by that of the treating physician.

## V. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-

16 - OPINION AND ORDER

39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

///

///

///

///

///

///

///

///

17 - OPINION AND ORDER

The ALJ's failure to credit the opinions of the treating physician and the mental health providers is erroneous for the reasons set out above. But the record does not establish that Zimmerman is entitled to benefits if the opinions were credited. Because outstanding issues remain, this matter is remanded for further proceedings.

## CONCLUSION

For these reasons, the ALJ's decision that Zimmermann is not disabled is not supported by substantial evidence. The decision of the Commissioner is reversed and this case is remanded for additional proceedings in accordance with this Opinion and Order.

IT IS SO ORDERED.

Dated this 28 day of September, 2012.

JAMES A. REDDEN
United States District Judge